UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Thomas A. Nuetzman,                                    Civil No. 06-2730 (PAM/JSM)

                        Plaintiff,

v.                                                     **MEMORANDUM AND ORDER**

Con-Way Transportation Services, Inc.,
formerly known as Con-Way Central
Express Company, Inc.,

                        Defendant.

_____

        This matter is before the Court on Defendant Con-Way Transportation Services, Inc.'s

Motion for Summary Judgment.  For the reasons that follow, the Court grants the Motion in

part and denies it in part.

## BACKGROUND

        Plaintiff Thomas Nuetzman began driving trucks for Defendant Con-Way

Transportation Services, Inc. ("Con-Way") in 1990.  He continues to work for Con-Way

today.  Since the beginning of his employment, Plaintiff has worked out of the Owatonna,

Minnesota, service center, which employs just over 45 people.

        In September of 2001, Plaintiff was diagnosed with multiple sclerosis ("MS").

Plaintiff alleges that he has suffered persistent physical problems resulting from his MS since

his diagnosis.  It is undisputed that in February 2002, Con-Way received a letter from

Plaintiff's physician indicating that the physician believed "it is necessary for this individual

to have air conditioning in his truck" because heat could exacerbate Plaintiff's symptoms.

(Schmitt Aff. Ex. O.)  After consulting with Plaintiff's physician, Con-Way ultimately

determined that an air-conditioned truck was not a medical necessity for Plaintiff, and further that Plaintiff was not disabled and therefore did not require an air-conditioned vehicle as an accommodation.

Con-Way also asserts that there were no air-conditioned trucks at the Owatonna service center until 2004, although Con-Way's service centers in southern states began using air-conditioned trucks in 2002.  When the Owatonna service center received air-conditioned trucks, the new trucks were used on the longest routes because they posed fewer risks of breaking down than older trucks.  According to Con-Way, Plaintiff was not eligible for an air-conditioned truck because Plaintiff's routes were not among the longest routes at the Owatonna service center.  Con-Way contends that its system for assigning trucks is seniority-based, so that Plaintiff's failure to "bid" a longer route that might have had an air-conditioned truck is attributable only to Plaintiff's lack of seniority and his desire to work short-haul routes, and not any discriminatory animus.

Plaintiff challenges Con-Way's assignment procedures and claims that he drove as many or more miles than did drivers on routes with air-conditioned trucks.  Additionally, Plaintiff argues that there is no evidence that Con-Way maintained any system, seniority-based or otherwise, for assigning air-conditioned trucks.  In support of this claim, Plaintiff contends that Con-Way did not monitor or document where and to which routes air-conditioned trucks were assigned.

On April 30, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Minnesota Department of Human

Rights ("MDHR"), alleging that the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.01 et seq., required Con-Way to provide him with an air-conditioned truck as a reasonable accommodation for his disability.  On July 15, 2004, the EEOC dismissed Plaintiff's charge, finding no probable cause to believe that Con-Way had violated the ADA.  On August 18, 2004, the MDHR did the same.  Plaintiff did not appeal those decisions or bring a lawsuit within the time period provided.

On July 29, 2004, Plaintiff's physician signed a letter stating unequivocally that "it is medically necessary for [Plaintiff] to have air-conditioning in his truck . . . to prevent his condition from deteriorating."  (Schmitt Aff. Ex. U.)  Plaintiff alleges that he did not receive this letter until August 16, 2004, just two days before the MDHR's no-probable-cause determination.  Plaintiff forwarded the letter to Con-Way and asserts that Con-Way did not respond in any way to the letter.

On February 7, 2005, Plaintiff filed a new charge with the MDHR, again alleging that Con-Way failed to reasonably accommodate his disability by refusing to provide him with an air-conditioned truck.  Plaintiff also alleged that Con-Way failed to engage in an "interactive process" after receiving the July 29, 2004, letter from Plaintiff's physician. On September 23, 2005, the MDHR found probable cause for these claims.  (Schmitt Aff. Ex. 11 at CW000939.)  Con-Way appealed that determination, asserting that the conduct complained of in the second charge was the same as the conduct complained of in the first charge and therefore that Plaintiff was collaterally estopped from bringing the second charge.

On January 11, 2006, the MDHR rejected the appeal, finding that Plaintiff raised information in his second charge that was not contained in his first charge. (Id. at MN000060.)

While Con-Way's MDHR appeal was pending, Plaintiff contends that Con-Way retaliated against him for filing the second charge of discrimination. Specifically, Plaintiff contends that Con-Way changed his route to one that included a stop at a foundry, and that the new route was therefore significantly hotter than his previous route. Con-Way maintains that Plaintiff himself bid the new route, belying his claims of reprisal.

After the MDHR rejected Con-Way's appeal, Plaintiff timely instituted this lawsuit in Minnesota state court, raising claims for discrimination and reprisal under the MHRA. Con-Way subsequently removed the suit to this Court pursuant to the diversity jurisdiction removal statute, 28 U.S.C. § 1332(a).

Con-Way raises several issues in its Motion for Summary Judgment. First, Con-Way contends that Plaintiff's claims are barred by the doctrine of res judicata because Plaintiff had a full and fair opportunity to litigate his claims in his first charge and failed to do so. Second, Con-Way argues that even if Plaintiff is not precluded from bringing these claims, the statute of limitations bars him from challenging actions that occurred more than one year prior to the filing of his second charge. Third, Con-Way asserts that Plaintiff cannot show a prima facie case of disability discrimination under the MDHR because Plaintiff is not disabled within the meaning of that statute. Fourth, Con-Way maintains that even if Plaintiff can be considered disabled, an air-conditioned truck was not a "reasonable accommodation" under the MHRA because such accommodation posed an undue hardship for Con-Way. Fifth, Con-

Way challenges Plaintiff's allegations that he suffered reprisals for filing his second charge.

Finally, Con-Way contends that Plaintiff has failed to raise a genuine issue of material fact

as to whether Con-Way did not engage in the required "interactive process."

**DISCUSSION**

**A.      Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The Court

must view the evidence and the inferences that may be reasonably drawn from the evidence

in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank, 92 F.3d

743, 747 (8th Cir. 1996).  However, "summary judgment procedure is properly regarded not

as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a

whole, which are designed to secure the just, speedy, and inexpensive determination of every

action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of

material fact and that it is entitled to judgment as a matter of law.  Id. at 323; Enter. Bank,

92 F.3d at 747.  A party opposing a properly supported motion for summary judgment may

not rest on mere allegations or denials, but must set forth specific facts in the record showing

that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986).

**B.     Claim Preclusion**

Con-Way first argues that it is entitled to summary judgment on the entirety of Plaintiff's Complaint because Plaintiff is barred by claim preclusion from raising claims that were fully litigated in the context of his first charge of discrimination.[1]  The Court must first determine whether MDHR proceedings can give rise to preclusion.  If so, the Court must examine whether the doctrine of res judicata, or claim preclusion, applies to bar Plaintiff's second charge.

1.     MDHR proceedings

Con-Way cites several Minnesota cases purporting to establish that MDHR proceedings are entitled to preclusive effect.  (Def.'s Supp. Mem. at 13.)  None of these citations is on point.  Although Con-Way is correct that Minnesota courts have held that the decision of an agency acting in a judicial or quasi-judicial capacity may give rise to preclusion, the cases in which Minnesota courts have applied preclusion all involve agencies that hold hearings on the claimant's charges.  See, e.g., Graham v. Special Sch. Dist. No. 1, 472 N.W.2d 114, 115 (Minn. 1991) (affording preclusive effect to findings of hearing examiner reached after nine-day hearing); Minn. Dep't of Highways v. Minn. Dep't of Human Rights, 241 N.W.2d 310 (Minn. 1976) (affording preclusive effect to agency's determination on plaintiff's religious discrimination claims, reached after hearing before

---

[1] The Court notes that Con-Way's arguments regarding preclusion appear to be better suited to an argument that Plaintiff failed to exhaust his remedies on the claims made in his first charge. See, e.g., Gipson v. KAS Snacktime Co., 83 F.3d 225, 228-29 (8th Cir. 1996) (noting that under Missouri's Human Rights Act claimant's failure timely to bring suit after adverse agency determination bars claimant's claims related to charges raised before agency), abrogated on other grounds, Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116-17 (2002).

three-person panel).  Con-Way cites no authority for the proposition that under the current

version of the MHRA,  results of an MDHR investigation are entitled to any preclusive

effect.

Con-Way cites Sokoya v. 4343 Clarendon Condo Association, No. 96 C 5278, 1996

WL 699634 (N.D. Ill. Nov. 27, 1996), for the proposition that preclusion is permissible under

a statute such as the MHRA, which provides a claimant with the option to pursue remedies

either in court or before an administrative agency.  (Def.'s Supp. Mem. at 13 n.3.)  The

opinion in Sokoya, however, does not support Con-Way's arguments.

Sokoya involved a complaint under federal civil rights laws and the Fair Housing Act,

alleging racial discrimination in housing.  Sokoya, 1996 WL 699634, at *1.  The plaintiff

initially filed a claim with the Chicago Commission on Human Rights, which held a hearing

at which the plaintiff presented evidence and was allowed to cross-examine witnesses.  Id.

at *2.  After the CCHR made an adverse determination on his claims, the plaintiff brought

suit in federal court, raising the same complaints that he had raised before the CCHR.

In evaluating whether the plaintiff's claims could be precluded by res judicata, the

court reviewed the history of the doctrine of administrative preclusion in the federal courts.

Id. at *3-4.  The court noted that federal courts apply preclusion to an agency's decisions

when the agency is acting in a judicial or quasi-judicial capacity.  The court then recited the

prevailing law on when an agency decision is judicial or quasi-judicial:

> An agency acts in a judicial capacity when it provides the following
> safeguards: (1) opportunity for representation by counsel; (2) pretrial
> discovery; (3) the opportunity to present memoranda of law; (4) examinations
> and cross-examinations at the hearing; (5) the opportunity to introduce

7

exhibits; (6) the chance to object to evidence at the hearing; and (7) final findings of fact and conclusions of law. Reed v. AMAX Coal Company, 971 F.2d 1295, 1300 (7th Cir.1992).

Id. at *6; see also Buckley v. United States, 51 Fed. Cl. 174 (Ct. Fed. Cl. 2001) (citing Reed); Delamater v. Schweiker, 721 F.2d 50, 53-54 (2d Cir.1983) (finding that "[a]n action taken by an administrative agency to grant or deny a benefit is not an adjudicated action unless the agency has made its decision using procedures substantially similar to those employed by the courts" and that an administrative decision in which "[t]here was no hearing, no testimony, no subpoenaed evidence, no argument, no opportunity to test any contention by confrontation" would not be given preclusive effect); Nasem v. Brown, 595 F.2d 801, 807 (D.C. Cir. 1979) (administrative proceeding that did not allow claimant to present live witness testimony not entitled to preclusive effect).

Under the rule set forth in these cases, the MDHR proceedings available to Plaintiff were not judicial or even quasi-judicial in nature. A claimant bringing a charge of discrimination to the MDHR is not generally represented by counsel, and there is no "trial" and therefore no pretrial discovery. A claimant has no opportunity to present memoranda of law or to examine or cross-examine witnesses, no opportunity to introduce evidence, and no opportunity to object to any evidence. The initial MDHR proceedings are not "substantially similar to those employed by the courts." Delameter, 721 F.2d at 53. Therefore, the investigative proceedings before the MDHR do not qualify for any preclusive effect and Con-Way's Motion on this point is denied.

## C.    Disability under the MHRA

To prevail on his claims under the MHRA, Plaintiff must first prove that he is disabled within the meaning of that statute. The MHRA provides that "[a] disabled person is any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." Minn. Stat. § 363A.03, subd. 12. Plaintiff contends that MS is a physical impairment that materially limits his life activity of working. Plaintiff also argues that he has a record of an impairment and that Con-Way regarded him as impaired.

> An impairment "substantially limits" a major life activity if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity as compared to the general population and as determined by the nature and severity of the impairment, its duration, and its long-term impact.

Heimbach v. Riedman Corp., 175 F. Supp. 2d 1167, 1176 (D. Minn. 2001) (Tunheim, J.) (citing 29 C.F.R. § 1630.2(j)); see also Lang v. City of Maplewood, 574 N.W.2d 451, 453-54 (Minn. Ct. App. 1998) (using ADA caselaw to interpret MHRA). Con-Way asserts that because Plaintiff can work most of the time, he is not materially limited in the major life activity of working. Under Con-Way's reading of the MHRA, Plaintiff is only impaired in the major life activity of working if Plaintiff is completely unable to work.

Plaintiff has come forward with evidence to show that he suffers from difficulty walking, numbness in his extremities, and blurred vision, in addition to other symptoms typical of MS. These symptoms are not constant, and indeed Plaintiff's charges in this case arose because Plaintiff alleges that his symptoms are made worse by driving an un-air-conditioned truck in the summer. The record shows that Plaintiff's medical absences since

his diagnosis have been almost exclusively in the summer months, and Con-Way does not dispute that when Plaintiff suffers "flare-ups" of his symptoms, he is completely unable to work, often for a week or more at a time.

Plaintiff has at least raised a genuine issue of fact as to whether he is disabled within the meaning of the MHRA.  Plaintiff's evidence raises a question as to whether he is able to work in the same manner and duration as the general population.  Moreover, there is no dispute that, especially during flare-ups, Plaintiff's MS is a severe impairment.  Finally, MS is not curable and the long-term impact of the disease is, by any measure, dire.  Plaintiff has succeeded in showing for the purposes of this Motion that he is a disabled person under the MHRA.

**D.     Statute of Limitations**

Con-Way asserts that most of Plaintiff's complaints are untimely and barred by the MHRA's statute of limitations.  Pursuant to the MHRA, a plaintiff must file a civil suit or a charge of discrimination "within one year after the occurrence of the practice."  Minn. Stat. § 363A.28, subd. 3.  According to Con-Way, Plaintiff's charge was filed on February 7, 2005, and consequently any alleged acts occurring before February 7, 2004, are time-barred.  Plaintiff contends that his claims are timely because they are part of a continuing violation, see Treanor v. MCI Telecomm. Corp., 200 F.3d 570, 573 (8th Cir. 2000) (holding the statute of limitations in MHRA may be avoided under the continuing violations theory), although he offers no factual or legal support for this argument.  Con-Way maintains that any alleged discriminatory acts were discrete events and not part of a continuing violation.

A "continuing violation" is an unlawful employment practice that manifests itself over time, instead of through a series of discrete acts. Mandy v. Minn. Mining & Mfg. Co., 940 F. Supp. 1463, 1468 (D. Minn. 1996) (Tunheim, J.). If a series of acts constitutes a continuing pattern of discrimination, the applicable statute of limitations period does not commence until the last occurrence of discrimination. Id. at 1467. Minnesota courts have applied this doctrine to MHRA claims. See Sigurdson v. Isanti County, 448 N.W.2d 62, 68 (Minn. 1989). Federal courts have recognized two types of continuing violations: (1) a series of related acts, one or more of which falls within the limitations period; or (2) the maintenance of a discriminatory system or policy both before and during the limitations period. See Mandy, 940 F. Supp. at 1468. Plaintiff merely states that his claims constitute a continuing violation and does not address under which type of continuing violation his claims fall.

A plaintiff cannot assert a continuing violation based on isolated instances of discrimination in the past, even if effects of the discrimination continue into the present. See Jenkins v. Wal-Mart Stores, Inc., 910 F. Supp. 1399, 1414 (N.D. Iowa 1995) (citing Heymann v. Tertra Plastics Corp., 640 F.2d 115, 120 (8th Cir. 1981)). Thus, to maintain his claims under the continuing violation theory, Plaintiff must demonstrate that the alleged acts of discrimination were not actionable as discrete violations, but instead were a series of related acts. See Stolzenburg v. Ford Motor Co., 143 F.3d 402, 405 (8th Cir. 1998). However, in Plaintiff's opposition to the Motion for Summary Judgment he neither identifies why the acts are not discrete acts nor produces any evidence supporting his position that the acts are part of a continuing violation.

In opposing a Motion for Summary Judgment, it is Plaintiff's burden to come forward with probative evidence to support his claims.  The Court is not obligated to search the record to find such evidence, nor can Plaintiff rest on mere allegations and unsupported assertions.  Because Plaintiff has not met his burden to produce significant probative evidence demonstrating a genuine issue for trial, all of his claims of discrimination based on acts that occurred prior to February 7, 2004, are time-barred.

**E.     Reasonable Accommodation**

Under the MHRA, the failure of an employer to make a reasonable accommodation for an employee's disability is by definition an unfair employment practice, unless the employer can demonstrate that providing such accommodation "would impose an undue hardship" on the employer.  Minn. Stat. § 363A.08, subd. 6.  The statute specifically includes "acquisition or modification of equipment" in its list of reasonable accommodations.  Id.  Con-Way disputes whether providing Plaintiff with an air-conditioned truck is a reasonable accommodation.

Con-Way contends that providing Plaintiff with an air-conditioned truck would constitute an undue hardship because it would upset the seniority-based system that Con-Way's drivers use to select routes.  In support of this argument, Con-Way cites U.S. Airways v. Barnett, 535 U.S. 391 (2002).  In that case, the Supreme Court found that upsetting a bona fide seniority system is presumptively an undue hardship.  Id. at 404.

Plaintiff's request for an accommodation in this case is categorically different from the requests at issue in U.S. Airways.  The seniority system in U.S. Airways involved more than

14,000 employees.  Id. at 395.  Although Con-Way's nationwide operations undoubtedly employ a large number of people, its seniority system at its Owatonna service center involves no more than 45 employees.  Moreover, in U.S. Airways, the seniority system allowed employees to change their jobs from, for example, a baggage handler to working in the mailroom.  Id. at 394.  Here, the seniority system merely covers what route a driver will take and does not allow drivers to choose other jobs within the company.  Finally, the Court in U.S. Airways specifically noted that the presumption would not apply in every case and that the employee "remains free to show that special circumstances warrant a finding that, despite the presence of a seniority system . . . , the requested 'accommodation' is 'reasonable' on the particular facts."  Id. at 405.  Plaintiff has submitted sufficient evidence to raise a genuine issue as to whether those special circumstances exist in this case.  The Court therefore declines to apply the U.S. Airways undue-hardship presumption on the specific facts of this case.

Plaintiff has raised a genuine issue of fact as to whether Con-Way's justifications for its refusal to allow Plaintiff to drive an air-conditioned truck despite his repeated requests constitute "undue hardships" within the meaning of the MHRA.  To the extent that Con-Way's Motion challenges the reasonableness of the accommodation Plaintiff seeks, that Motion is denied.

## F.    Reprisal

Plaintiff alleges that Con-Way retaliated against him for filing his second charge of discrimination by changing the start time of the his regular route, which allegedly caused him

to bid a route that included a stop at a foundry.  Con-Way contends that these allegations do not constitute an adverse employment action for purposes of stating a prima facie case of reprisal under the MHRA.  See Hoover v. Norwest Private Mortgage Banking, 632 N.W.2d 534, 548 (Minn. 2001) (noting that prima facie elements for MHRA reprisal claim are: "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two") (quoting Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn. 1983)).

Even if changing route start times could in certain circumstances rise to the level of an adverse employment action, Plaintiff's allegations require several logical leaps.  First, the Court must assume that Con-Way knew that by changing the start time of his regular route, Plaintiff would decide to bid another route.  Next, the Court must assume that Con-Way knew that Plaintiff would choose the route with the foundry.  The Court finds that these logical inferences are simply not warranted by the evidence presented.  To the contrary, Con-Way has presented evidence that the change in route start times was precipitated by a company-wide restructuring and route evaluation procedure.  Plaintiff has not and likely cannot show that this company-wide event was a mere pretext to discriminate against him.  He has failed to carry his burden on his claim of reprisal, and Con-Way's Motion on that claim is granted.

## G.    Interactive Process

Plaintiff alleges that Con-Way failed in its statutory duty to engage in an interactive process with him about possible reasonable accommodations for his disability.  The term "interactive process" is not found in the MHRA, but rather is a term found in regulations

14

promulgated pursuant to the ADA.  See 29 C.F.R. § 1630.2(o)(3).  Because the parties both assume that the ADA "interactive process" requirement applies to reasonable accommodations under the MHRA, the Court will operate under that assumption as well.

The "interactive process" required by the ADA is intended to ensure that the employee and employer work together in good faith to attempt to resolve an employee's request for a accommodation for his disability.  See Fjellstad v. Pizza Hut, Inc., 188 F.3d 428, 444 (8th Cir. 1999) (finding that prima facie elements of interactive process claim include employee informing employer of disability and requesting accommodation for disability, and employer's failure to make good-faith effort to assist employee with accommodation).  Plaintiff contends that Con-Way's failure to provide him with an air-conditioned truck since 2002 is evidence of Con-Way's lack of good faith in assisting Plaintiff with finding an accommodation for his disability.  However, as noted above, Plaintiff's claims are limited to those occurring after February 7, 2004, and thus Con-Way's alleged failures prior to that time are not relevant.

Plaintiff's memorandum does not specify whether he requested an accommodation from Con-Way during the relevant time period.  He does allege that Con-Way's failure to respond to his physician's July 2004 letter constitutes a failure to engage in the interactive process.  Con-Way does not dispute that it did not respond to this letter, but instead argues that the letter offered no new information than what Plaintiff previously brought forward.

The Court disagrees that the July 2004 letter from Plaintiff's physician did not provide Con-Way with new information.  Con-Way argues that it did not provide Plaintiff with an air-conditioned truck in 2002 in large part because Plaintiff's physicians did not tell Con-Way

15

that such an accommodation was medically necessary.  In July 2004, a physician finally told

Con-Way that an air-conditioned truck was a medical necessity for Plaintiff.  Con-Way cannot

claim that it was justified in refusing to offer an accommodation because of the lack of a

medical necessity and then claim that it could later ignore the physician's medical-necessity

opinion.  For purposes of summary judgment, Plaintiff has raised a genuine issue of material

fact as to whether Con-Way's failure to respond to the July 2004 physician's letter constituted

a a lack of good faith on Con-Way's part.  Con-Way's Motion on Plaintiff's interactive

process claim is to that extent denied.

**CONCLUSION**

Accordingly, and as set forth more fully above, **IT IS HEREBY ORDERED** that

Defendant's Motion for Summary Judgment (Docket No. 15) is **GRANTED in part** and

**DENIED in part**.


Dated: October 1, 2007

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge